UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.3:08-cr-175 |
| ) | JUDGES PHILLIPS/SHIRLEY |
| CLARK ALAN ROBERTS, and ) | |
| SEAN EDWARD HOWLEY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SUPERSEDING INDICTMENT ON THE BASIS OF UNCONSTITUTIONAL VAGUENESS**

The defendant, Clark Alan Roberts, by and through counsel and pursuant to Fed. R. Crim. P. 7(c) and 12(b)(3)(A)-(B), U.S. Const. amend. V, United States v. Harriss, 347 U.S. 612, 617 (1954) ("The underlying principle [of the void for vagueness doctrine] is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."), and their progeny, has moved the Court for an Order dismissing all counts of the Superseding Indictment (Doc. 6) on the basis that the Economic Espionage Act is void for vagueness as applied to Mr. Roberts.

**I.  INTRODUCTION**

The Superseding Indictment alleges that Mr. Roberts and his co-defendant, Sean Edward Howley, engineers with Wyco Tire Technology Incorporated, obtained cell phone photographs of a Goodyear Swab Down System, or roll over-ply down device, which is a piece of equipment used in the tire industry to manufacture tires. See Superseding Indictment (Doc. 6) at pp. 1-3. The Superseding Indictment maintains that the photographs of the roll over-ply down device were taken by Mr. Howley during a visit that Mr. Roberts and Mr. Howley made to

-1-

Goodyear's manufacturing facility in Topeka, Kansas, for the purpose of evaluating Goodyear's tire manufacturing equipment for repairs. Id. at pp. 6-7. The Superseding Indictment alleges that Goodyear produced off the road tires ("OTR") for earth moving equipment as well as other products at its Topeka facility. Id. at p. 1, ¶ 1.

The Superseding Indictment alleges that the purpose of taking the photographs was to assist Wyco with the design and manufacture "of a *similar* device" for a Chinese tire company, HHSC. Id. at p. 5, ¶ 13(a) (emphasis added). The Superseding Indictment alleges that Wyko "was in the business of designing and creating manufacturing equipment used by other companies, such as Goodyear, to manufacture tires." Id. at pp. 1-2, ¶ 2. The Superseding Indictment alleges that Wyko agreed to supply to HHSC tire manufacturing equipment for OTR tires. Id. at p. 2, ¶ 4. The Superseding Indictment alleges that Wyko had never before manufactured a roll over-ply down device for "large OTR tires." Id. at p. 2, ¶ 6. The Superseding Indictment maintains that Wyko agreed to manufacture for HHSC a roll over-ply down device, yet the indictment does not specifically indicate whether this device was for passenger, commercial, or OTR tires. Id. at p. 2, ¶ 5.

The Superseding Indictment does not allege that the Goodyear roll over-ply down device photographed is or was a trade secret, but instead maintains that the "device *contained* trade secret information…." Id. at p. 3, ¶ 10 (emphasis added). However, the Superseding Indictment wholly fails to allege, at all, the actual items, even in general description and much less with particularity, alleged to be trade secrets. Moreover, the Superseding Indictment wholly fails to allege, at all, even in general terms and much less with particularity, the similarity between the device Wyco was manufacturing and the Goodyear roll over-ply down machine. In fact, the indictment is silent on whether the Goodyear device alleged to have been photographed was an

OTR device, a passenger vehicle device, or some other tire building device. Rather, the only facts alleged in the Superseding Indictment to support an allegation that the "similar" device photographed "contained" trade secrets are allegations that Goodyear implemented security measures at the plant in Topeka, Kansas. Id. at pp. 3-4, ¶ 10(a)-(f).

Utilizing the above theory, the Superseding Indictment charges multiple violations of the Economic Espionage Act ("EEA"). Count One charges a conspiracy to commit theft, unauthorized photographing and transmitting, and receiving and possessing trade secrets in violation of 18 U.S.C. § 1832(a)(5); Count Two charges actual theft and attempted theft of trade secrets in violation of 18 U.S.C. § 1832(a)(1) & (a)(4) and 18 U.S.C. § 2; Count Three charges actual photographing and attempting photographing of trade secrets in violation at 18 U.S.C. § 1832(a)(2) & (a)(4) and 18 U.S.C. § 2; Counts Four through Six charge actual transmittal and attempted transmittal of trade secrets on the basis of three e-mails of photographs of Goodyear's roll over-ply down machine in violation of 18 U.S.C. § 1832(a)(2) & (a)(4) and 18 U.S.C. § 2; Count Seven charges actual possession and attempted possession of trade secrets in violation of 18 U.S.C. § 1832(a)(3) & (a)(4) and 18 U.S.C. § 2; Counts Eight through Ten charge wire fraud and aiding and abetting wire fraud, incorporating in the alleged scheme to defraud the prior description of Goodyear's roll over-ply down device as "*contain[ing]*" trade secrets and re-alleging that photographs of the device were taken to "assist Wyko with the design and manufacture of a *similar* device ….", see Superseding Indictment (Doc. 6) at p. 12, ¶¶ 23-24, in violation of 18 U.S.C. §§ 1343 and 2; and Count Eleven alleges conspiracy to commit wire fraud, incorporating the prior allegations, in violation of 18 U.S.C. § 1349.

In sum, each count of the Superseding Indictment is dependent on the allegation that Goodyear's roll over-ply down device "*contained*" trade secret information and that cell phone

photographs of the device were obtained to assist Wyko in designing and manufacturing a "*similar*" device. For the following reasons, all counts of the Superseding Indictment must be dismissed for violation of the void for vagueness doctrine under U.S. Const. amend. V as applied to Mr. Roberts.

## II. THE ECONOMIC ESPIONAGE ACT IS UNCONSTITUTIONAL AS APPLIED TO MR. ROBERTS.

### A. The underlying principle of the void for vagueness doctrine is that no one should be held criminally responsible for conduct which that person could not reasonably understand to be proscribed.

U.S. Const. amend V provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law …." The void for vagueness doctrine informs that a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Const. Co., 269 U.S. 385, 391 (1926) (citing International Harvester Co. v. Kentucky, 234 U.S. 216 (1914) (ruling state statute unconstitutionally void and noting that "between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach, and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust")). See also Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947); Oliver W. Holmes, Jr., *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417-18 (1899) ("[W]e ask, not what this man meant, but what those words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used.").

"The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954). Criminal statutes must "define the criminal offense with sufficient definiteness

that ordinary people can understand what conduct is prohibited…." Kolender v. Lawson, 461 U.S. 352, 358 (1983). Therefore, a statute is unconstitutionally void for vagueness if it forces "men of common intelligence to necessarily guess at its meaning." Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973)). "The standard for vagueness in a criminal statute is if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." United States v. Avant, 907 F.2d 623, 625 (6th Cir. 1990).

The doctrine has different formulations, but the basic principle is that a law must have meaning independent of its application, and the scope of its application must be capable of being known in advance. The doctrine also requires "that a legislature establish minimal guidelines to govern law enforcement," Smith v. Goguen, 415 U.S. 566, 574 (1974), because a "vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* basis, with the attendant dangers of arbitrary and discriminatory application," Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); Belle Maer Harbor v. Charter Tp. Of Harrison, 107 F.3d 553, 557 (6th Cir. 1999).

A criminal statute is void for vagueness if it encourages arbitrary and discriminatory enforcement of the law. The vagueness doctrine serves twin purposes. First, the Due Process Clause requires that criminal statutes provide fair notice by voiding impermissibly vague statutes because they do not clearly define the prohibited conduct. See U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ."); Coates v. Cincinnati, 402 U.S. 611 (1971). Second, by striking down impermissibly vague statutes, courts reduce the potential for arbitrary and discriminatory enforcement of the laws by law enforcement officers and prosecutors. See Robert Batey, *Vagueness and the Construction of*

*Criminal Statutes – Balancing Acts*, 5 Va. J. Soc. Pol'y & L. 1(1997) (citing Giaccio v. Pennsylvania, 382 U.S. 399, 402 (1966) (voiding a costs of prosecution statute on vagueness grounds because it allowed juries to act arbitrarily and discriminatorily)).

The degree of vagueness that is constitutionally permissible, as well as the relative importance of fair enforcement, depends at least in part on the nature of the statute at issue. For example, courts have demonstrated tolerance of enactments with civil rather than criminal penalties, "because the consequences of imprecision are qualitatively less severe." Hoffman Estates v. Flipside, 455 U.S. at 499-500. Where a statute imposes criminal penalties, the standard of certainty required is higher. Kolender v. Lawson, 461 U.S. at 358-59 n.8; Winters v. New York, 333 U.S. 507, 515 (1948) (noting that a scienter requirement may mitigate a law's vagueness with respect to the adequacy of notice). Cf. Amusement Devices Association v. Ohio, 443 F. Supp. 1040 (S.D. Oh. 1977) (observing that the Supreme Court has never held that a scienter element alone necessarily renders the statute's prohibitions sufficiently precise to withstand a vagueness challenge); United States v. Lanier, 520 U.S. 259, 265 (1997).

**B.      Specific knowledge of the trade secret must be alleged and proven in order for the Economic Espionage Act to be constitutional as applied.**

In United States v. Krumrei, 258 F.3d 535 (6th Cir. 2001), the Sixth Circuit addressed, in the context of a conditional plea agreement, the vagueness of the definition of a trade secret under the Economic Espionage Act as applied to the defendant in that case:

> The constitutionality of a statute is a legal question which we review de novo. United States v. Hill, 167 F.3d 1055, 1063 (6th Cir.1999). As this court has explained, "[t]he standard for vagueness in a criminal statute is if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." United States v. Avant, 907 F.2d 623, 625 (6th Cir.1990). Although a vagueness analysis in the context of first amendment rights may involve consideration of hypothetical facts not specifically before the court, "it is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in

the light of the facts of the case at hand." United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) (citations omitted). Thus, defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation. Avant, 907 F.2d at 625.

…

The term "trade secret" is defined in 18 U.S.C. § 1839(3) as follows:

(3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-

(A) the owner thereof has taken reasonable measures to keep such information secret; and
(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

Defendant specifically alleges that the term "reasonable measures" in § 1839(3)(A) is unconstitutionally vague and that, therefore, the EEA does not allow an individual in defendant's position to adequately assess what constitutes a "trade secret." In addition, defendant alleges that the lack of clarity as to what constitutes "reasonable measures" has the potential to lead to arbitrary and discriminatory enforcement of the EEA. At oral argument, defendant's counsel also argued that defendant had no notice of any of the security measures taken by Wilsonart and that, in effect, there was no factual basis for defendant's guilty plea. ***The government contends that, regardless of whether there exist conditions under which the language of the EEA could be considered vague, those conditions are not before the court at this time.*** Under the factual scenario before this court, the government argues, there is no question that defendant knew what he was doing was prohibited and that, therefore, the statute is not unconstitutionally vague as applied to defendant.

The district court agreed with the government and denied defendant's motion to dismiss. The district court relied on the only other case to address a vagueness argument against the EEA, United States v. Hsu, 40 F.Supp.2d 623 (E.D.Pa.1999). There, the Pennsylvania district court explained that "a statute is not void for vagueness merely because it uses the word 'reasonable' or 'unreasonable.' " Id. at 628. Reviewing the particular facts of the case before it, the court held that:

> [A]s applied here, it is clear that [defendant] and his alleged co-conspirator ... were told on several occasions ... that the taxol technology

> in question was proprietary to BMS and Phyton, could not be acquired via a license or joint venture ... and that they would have to "get [it] another way," namely through an allegedly corrupt ... employee.... [Defendant] knew that BMS had taken many steps to keep its technology to itself, and therefore he will not be heard to quibble with the ductility of "reasonable measures" as applied to him in this case.
>
> Id. ***Because the defendant knew that the information was proprietary and knew that his actions were illegal, the statute was constitutional as applied to him.***
>
> In the present case, the evidence shows that defendant Krumrei was aware that he was selling confidential information to which he had no claim. … As the Pennsylvania district court held in Hsu, defendant cannot claim that the statute is vague when he clearly was aware that his actions fell well within the activity proscribed by the statute. Thus, we affirm the ruling of the district court that the EEA is not unconstitutionally vague as applied to defendant.

United States v. Krumrei, 258 F.3d 535, 537-539 (6th Cir. 2001) (emphasis added); see also United States v. Yang, 281 F.3d 534, 544, n.2 (6th Cir. 2002) (rejecting as applied vagueness claim on basis that "[w]e have every confidence that ordinary people seeking to steal information ***that they believe is a trade secret*** would understand that their conduct is proscribed by the statute.") (emphasis added).

The court in United States v. Genovese, 409 F.Supp.2d 253 (S.D.N.Y. 2005), relying on the Sixth Circuit's decision in Krumrei, also emphasized the importance of allegations concerning the defendant's knowledge of the information as a trade secret in determining whether the EEA's definition of a trade secret was impermissibly vague as applied. In Genovese, the defendant was charged in a single count indictment with downloading source code of the Microsoft operating systems Windows NT 4.0 and Windows 2000 via the internet, advertising the code as "jacked" and offering it for download on his website, and selling the source code to an undercover government agent for twenty dollars. 409 F.Supp.2d at 255. In determining the vagueness claim, the Genovese court initially noted that the allegations in the

indictment were presumed true for purposes of the motion. Id. at 255-256. The court then went on the analyze the vagueness doctrine as applied to the facts alleged against the defendant in the indictment:

> With respect to the "reasonable measures" element of the EEA's "trade secret" definition, Genovese contends that he "was in no position to make a determination about whether Microsoft took any measures to protect the secrecy of its source code, let alone whether those measures were 'reasonable.' " (Def. Mem. at 17.)
>
> Once again, Genovese's website posting belies any claim that he was a casual Internet browser who happened upon the source code without knowledge of its owner or the manner in which the code entered the public domain. As discussed above, the posting reveals that Genovese knew that a third-party had "jacked" the source code from Microsoft. ***Having acknowledged both that the source code was proprietary to Microsoft and that someone else penetrated whatever safeguards Microsoft enlisted to protect it, Genovese cannot now argue that the statute was insufficient to put him on notice that the source code constituted a trade secret under the EEA. For Section 1839(3)'s "trade secret" definition to survive a vague-as-applied challenge, a "defendant need not have been aware of the particular security measures taken by" the trade secret's owner, as long as the "defendant knew the information was proprietary."*** United States v. Krumrei, 258 F.3d 535, 539 (6th Cir. 2001) (noting that the defendant "was aware that he was selling confidential information to which he had no claim"); see also Hsu, 40 F.Supp.2d at 628 (defendant was told that "the taxol technology in question was proprietary"). In this case, one can infer that Genovese knew not only that the source code was proprietary, but that any protective measures by Microsoft had been circumvented. At a later stage in this proceeding, Genovese may choose to argue to this Court or to a jury that Microsoft's measures were not "reasonable," or that Genovese could not have known what, if any, measures Microsoft maintained. For purposes of his vagueness challenge, however, Genovese's knowledge that the source code belonged to Microsoft and that others had stolen it was sufficient for him to "reasonably understand" that the conduct alleged in the Indictment was proscribed by Section 1832(a)(2). Harriss, 347 U.S. at 617, 74 S.Ct. 808.
>
> As such, Section 1839(3) defines "trade secret" with "sufficient definiteness" so that an ordinary person in Genovese's position could understand that trafficking in the Windows source code was prohibited by law. Kolender, 461 U.S. at 357, 103 S.Ct. 1855. As applied to the facts of this case, the statute is not so vague that it violates the defendant's due process.

United States v. Genovese, 409 F.Supp.2d 253, 257-258 (S.D.N.Y. 2005); see also United States v. Chung, Not Reported in F.Supp.2d, 2009 WL 997341, No. Sacr 08-00024-CJC (C.D. Cal. April 13, 2009) (finding EEA's definition of trade secret to not be unconstitutionally void for vagueness as applied when the facts alleged in the indictment established defendant Chung's knowledge of the trade secret status of documents related to Boeing's Space Shuttle, Delta Rocket, and military cargo plane programs that he was alleged to have provided to the government of the People's Republic of China at its request).

In the present case, even presuming the allegations in the indictment true for purposes of a pretrial motion to dismiss, nowhere does the Superseding Indictment allege that Mr. Roberts ***knew*** that a trade secret was "contained" in the roll over-ply down device owned by Goodyear, much less is it alleged that he had specific ***knowledge*** of the trade secret status of the unnamed materials "contained" in the device. Nowhere is it alleged that Mr. Roberts (1) ***knew*** that the information was proprietary (in fact, compounding the error, in a Kafkaesque[1] fashion the specific information alleged to be a trade secret isn't even mentioned in the indictment) and (2) ***knew*** that his actions were illegal. With respect to each count of the Superseding Indictment, no facts are alleged to establish knowledge of the trade secret status of the unnamed information "contained" within Goodyear's roll over-ply down device.

Moreover, unlike the situation in United States v. Genovese, 409 F.Supp.2d 253, 257 (S.D.N.Y. 2005) ("The Government alleges that he described the code as 'jacked' and indicated that others would have to "look hard" to find it elsewhere. … As such, Genovese was on notice that Microsoft had not publicly released the code and recognized its public scarcity. Moreover, because Genovese offered the code for sale and successfully sold it, he was on notice that it

---

[1] Kafka, Franz, The Trial (1925). In Kafka's novel The Trial, the main character, Josef, is arrested and tried for a crime that is never disclosed.

derived value from its relative obscurity, notwithstanding that it was available from other sources."), nowhere are facts alleged to establish that Mr. Roberts had knowledge that Goodyear's roll over-ply down device derived independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the general public. See 18 U.S.C. § 1839(3) (defining trade secret under the EEA). The only facts alleged on this point are that Wyco was manufacturing a "similar" device to the one photographed and that the alleged photographs were taken of Goodyear's device to assist in the design and manufacture process by Wyco.

Accordingly, the statute is impermissibly vague and unconstitutional as applied given the facts alleged in the Superseding Indictment, warranting pretrial dismissal.

## III.  CONCLUSION

For the foregoing reasons, the defendant respectfully submits that the Superseding Indictment must be dismissed since the EEA is unconstitutionally vague as applied.

Respectfully submitted this 14th day of May, 2009.

                                            s/ W. Thomas Dillard
                                            **W. THOMAS DILLARD**
                                            **[BPR # 002020]**

                                            s/ Stephen Ross Johnson
                                            **STEPHEN ROSS JOHNSON**
                                            **[BPR# 022140]**

                                            **RITCHIE, DILLARD, & DAVIES, P.C.**
                                            606 W. Main Street, Suite 300
                                            P. O. Box 1126
                                            Knoxville, TN 37901-1126
                                            (865) 637-0661
                                            www.rddlawfirm.com
                                            *Counsel for Clark Alan Roberts*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 14, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                              s/ Stephen Ross Johnson