UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:08-CR-174 |
| | ) | JUDGES PHILLIPS/SHIRLEY |
| CLARK ALAN ROBERTS, and | ) | |
| SEAN EDWARD HOWLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS' MOTION TO DISMISS SUPERCEDING INDICTMENT ON THE BASIS FOR FAILURE TO STATE AN OFFENSE AND DEFENDANTS' MOTION TO DISMISS INDICTMENT ON THE BASIS OF UNCONSTITUTIONAL VAGUENESS**

COMES NOW the United States, by and through its undersigned counsel and hereby files this omnibus response in opposition to Defendants' Motions to Dismiss the Superceding Indictment and respectfully requests that the Motions be denied.

As further explained below, the Superceding Indictment is not unconstitutionally vague, it readily satisfies the requirements of providing notice of the charges and tracks the statutory language requirements.

**I. RELEVANT FACTS**

The Indictment in this case was filed on December 2, 2008 charging the defendants with one count of Conspiracy pursuant to 18 U.S.C. §1832(a)(5), one count of Theft and Attempted Theft of Trade Secrets in violation of 18 U.S.C. §§ 1832(a)(1), (a)(4) & 2, one count of Photographing and Attempted Photographing of Trade Secrets in violation of 18 U.S.C. §§ 1832(a)(2), (a)(4) & 2, three counts of Transmittal and Attempted Transmittal of Trade Secrets in violation of 18 U.S.C. §§ 1832(a)(2), (a)(4) & 2, one count of Possession and Attempted Possession of Stolen Trade Secrets under 18 U.S.C. §§ 1832(a)(3), (a)(4) & 2 and three counts of Wire Fraud

under 18 U.S.C. §§ 1343 and 2. (Court Clerk's Docket Document #3.) A Superceding Indictment charging the defendants with the same counts and statutory violations was filed on March 3, 2009. (Document #6)

## II. ARGUMENT

A.    DEFENDANTS HAVE FAILED TO SHOW THAT TRADE SECRET STATUTE IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO THE FACTS OF THIS CASE

Every court to have considered vagueness challenges to Economic Espionage Act (EEA), including the Sixth Circuit Court of Appeals, has rejected the challenge as applied to the defendants in those cases. *See United States v. Krumrie*, 258 F.3d 535, 537-539 (6th Cir. 2001) (the term "reasonable measures" as used in EEA's definition of trade secret held not unconstitutionally vague as applied against former contractor of trade secret owner who was caught in a sting operation trying to sell trade secrets to the owner's competitor); *United States v. Genovese*, 409 F.Supp.2d. 253, 257-58 (S.D.N.Y. 2005) (rejecting as applied and facial vagueness challenges to the EEA); *United States v. Hsu*, 40 F. Supp.2d 623, 628 (U.S. Dist. Ct. E.D.P.A. 1999) (the term "reasonable measures" as used in EEA's definition of trade secret held not unconstitutionally vague as applied against officers of foreign corporation who were caught in a sting operation trying to purchase trade secrets relating to anti-cancer drug Taxol, owned by Bristol-Myers Squibb); *United States v. Nosal*, 2009 WL 981336, *3 (N.D. Cal., April 18, 2009) (rejecting void for vagueness challenge to nearly identical indictment language, and rejecting argument that knowledge of illegality must be alleged); *United States v. Chung*, 2009 WL 997341 (C.D. Cal., April 13, 2009) (rejecting vagueness challenge to economic espionage indictment alleging intent to benefit foreign instrumentality). Thus, the outcome should be no different in this case.

The void for vagueness doctrine has its constitutional foundation in the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution. *See Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999); *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). A criminal statute is unconstitutionally vague and violates the Due Process Clause if it fails (1) to define the offense with sufficient definiteness that ordinary people can understand the prohibited conduct; or (2) to establish standards to permit law enforcement to enforce the law in a non-arbitrary, non-discriminatory manner. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983)*; see also United States v. Krumrie*, 258 F.3d 535, 537 (6th Cir. 2001) (rejecting void for vagueness as applied challenge to Economic Espionage Act). The Supreme Court has held that the second prong - providing minimal guidelines to govern the conduct of law enforcement - constitutes the more important aspect of the vagueness doctrine. *See Smith v. Goguen*, 415 U.S. 566 (1974). The fact that Congress may have chosen more precise language in enacting a statute does not, in itself, mean that the statute is vague. *United States v. Powell*, 423 U.S. 87, 94 (1975); *United States v. Petrillo*, 332 U.S. 1, 7 (1947).

The determination as to whether a federal statute is void for vagueness is a significant matter. The Supreme Court has held that " `[e]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' " *Chapman v. United States*, 500 U.S. 453, 464 (1991), (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg.& Constr. Trades Council*, 485 U.S. 568, 575 (1988)). Indeed, "[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

3

Claims of vagueness which do not involve First Amendment freedoms must be examined in light of the facts of the particular case at hand, and should not be examined on the basis of the statute's facial validity. *See Krumrei*, 258 F.3d at 537; *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d at 1109, n.6 (limiting vagueness challenge to an "as applied" analysis because the case did not implicate First Amendment rights); *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990) (reviewing vagueness challenge to a statute not involving First Amendment rights on the facts of that specific case). Furthermore, Defendants must show that the statute, as applied to the particular facts of their case, is so indefinite that it did not present them with an ascertainable standard of guilt. *Parker v. Levy*, 417 U.S. 733, 756 (1974).

**1. The EEA Does Not Require Proof That the Defendants Knew Their Conduct Was Illegal**

Without citing any authority, Defendants complain that the Superseding Indictment is unconstitutionally vague because it fails to allege the defendants "knew that [their] actions were illegal." Defendants Brief Regarding Vagueness (Def. Br.) at 10. This argument ignores the plain language of the EEA, its legislative history and the caselaw, and should be rejected. Knowledge of illegality of one's conduct – the willfulness standard – is not an element of proof for trade secret theft under the EEA, and Defendants can point to nothing in the plain language of the statute or in its legislative history in support of reading such an element into the statute. The government need not prove that a defendant himself had concluded that the information he took fit the legal definition of a "trade secret" set forth in 18 U.S.C. § 1839(3). If the government had to prove this, Section 1832 violations would be nearly impossible to prosecute.

        *a.*    *The Plain Language of the Statute Does Not Require Knowledge of Illegality or of the Legal Definition of a Trade Secret*

The plain language of the statute sets forth three *mens rea* requirements: The government must show the defendant, "[*1*] with intent to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof, and [*2*] intending or knowing that the offense will injure any owner of that trade secret, [*3*] knowingly" engaged in misappropriation. 18 U.S.C. § 1832(a). Nothing in the language of the statute suggests that the government must allege and prove the defendant acted with knowledge that his conduct was unlawful and with the intent to violate the law. This is the heightened willfulness standard, as required in criminal tax fraud, criminal copyright infringement and certain money laundering charges. *See, e.g., Cheek v. United States*, 498 U.S. 192, 201 (1991) (criminal tax evasion). To the contrary, the Supreme Court has held that, "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U. S. 184, 193 (1998).

### b. The EEA's Legislative History Expressly Rejects Requiring Proof of Knowledge of Illegality or of the Legal Definition of a Trade Secret

The legislative history further repudiates Defendants's attempt to inject a willfulness requirement into the EEA. In enacting the statute, Congress explained that "a knowing state of mind with respect to an element of the offense is (1) an awareness of the nature of one's conduct, and (2) an awareness of or a firm belief in or knowledge to a substantial certainty of the existence of a relevant circumstance, such as whether the information is proprietary economic information as defined by this statute." S. Rep. No. 104-359, at 16. Directly refuting the defendants's argument, Congress further stated:

> **It is not necessary that the government prove that the defendant knew his or her actions were illegal**, rather the government must prove that the defendant's actions

5

were not authorized by the nature of his or her relationship to the owner of the property and that the defendant **knew or should have known** that fact.

H.R. Rep. No. 104-788, at 12 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4021, 4031; 142 Cong. Rec. 27,117 (1996) (emphasis added).

    *c.*  *Caselaw Does Not Support Defendants' Statutory Interpretation Argument*

Finally, the caselaw directly contradicts defendants' arguments. In only one of the cases that has considered a vague as applied challenge to the EEA, did the defendant argue that the government was required to allege and prove that the Defendant knew his conduct was illegal. That case, *United States v. Nosal*, found that nothing in the statue or the rulings in *Hsu* or *Krumrei* required any showing of knowledge of illegality. *Nosal*, 2009 WL 981336 at \*3. Instead, the *Nosal* court ruled that the "knowing" element simply required an allegation that the Defendant was aware of the proprietary nature of the information at issue. *Id.*

Defendants' suggestion that *Krumrei*, *Hsu* and *Genovese* held that the EEA requires an allegation that the defendant knew his actions were illegal is misleading. None of those cases reached such as conclusion, and instead, stand only for the proposition that the government must allege facts showing an awareness by a defendant that the information at issue was proprietary.

In *Krumrei*, the defendant argued on appeal that because the "reasonableness" of measures taken to maintain the confidentiality of a trade secret must be decided on a case-by-case basis, the entire statute was too vague to be enforced. *Krumrei*, 258 F.3d at 538. That case was decided on an entirely different procedural posture; the defendant had already pleaded guilty and had made a number of statements regarding his knowledge during allocution at sentencing. In holding that Section 1832 was not unconstitutionally vague as applied to Krumrei, the Sixth Circuit found that there was sufficient evidence to show that he "was aware that he was selling confidential

information to which he had no claim" and that he knew that the information that he took was proprietary to the company Wilsonart. *Id.* at 539. The court relied on statements made by the defendant at his guilty plea hearing, at which he admitted (1) obtaining trade secret information from his employer that he knew to be proprietary to Wilsonart, (2) forwarding the information to a competitor of Wilsonart, and (3) taking his actions for the purpose of benefitting someone other than the owner of the trade secret. *Id.* Based on these statements – which obviously cannot exist in the pre-trial posture of this case – the court found that Krumrei "cannot claim that the statute is vague when he clearly was aware that his actions fell within the activity proscribed by the statute." *Id.*

In *Hsu*, the defendant moved to dismiss a theft of trade secrets charge brought against him under Section 1832. As in *Krumrei*, the defendant in *Hsu* argued that Section 1832 was void for vagueness because the definition of "trade secret" does not define "'reasonable measures' to keep the information secret" or "what is meant by information not being 'generally known' or 'readily ascertainable' to the public." *Hsu*, 40 F. Supp.2d at 626. The district court held that Section 1832 was not void for vagueness as applied to Hsu because, based on evidence before the court, Hsu knew that the owner of the alleged trade secrets "had taken many steps to keep its technology to itself," *id.* at 628, and that the defendant could not acquire the technology by any other means than by getting it from a corrupt employee of the trade secret's owner, *id.* at 631.

Finally, in *Genovese*, the defendant moved to dismiss an indictment for violation of 18 U.S.C. § 1832(a), arising out of his downloading and sale of trade secret Microsoft source code that had been illegally posted on the Internet. *Genovese*, 409 F.Supp.2d. 253. As in *Hsu* and *Krumrei*, Genovese argued that the definition of a trade secret was unconstitutionally vague as applied to the

7

facts of that case. There, the defendant apparently had no relationship with Microsoft, which was the owner of the trade secret source code. Instead, he simply downloaded the purloined code and offered to sell it. *Id.* at 254. In challenging the EEA as unconstitutionally vague as applied to his case, the defendant claimed that he could not have known that the source code was not generally known to the public, or that it had been subject to reasonable measures to maintain its confidentiality, because the indictment alleged that he downloaded it from the Internet before offering to sell it. *Id.* at 257-58. Rejecting this argument, the court found that the allegations in the Indictment that the defendant had advertised the code as "jacked," indicated that he had reason to know that he was the code was not his to sell, even if he was not aware of the particular security measures Microsoft employed, and even if the code was not kept absolutely secret. *Id.*

Based on the plain language of the EEA and its legislative history, the government can satisfy the knowledge requirement with respect to alleged trade secret information by proving that the defendant knew or should have known that his or her actions regarding the alleged trade secret information were not authorized. This may include allegations that the defendant knew or should have known the information was considered proprietary by its owner. Furthermore, this knowledge may be based on a defendant's awareness of proprietary markings, security measures, and confidentiality agreements. More generally, the government could simply prove that a defendant knew or had a firm belief that the information was valuable to its owner because it was not generally known to the public, and that its owner had taken measures to protect it. Accordingly, because knowledge of the illegality of one's actions is not a required element of the EEA, the Superseding Indictment should not be dismissed for failure to allege such knowledge.

    **2.**     **The Allegations of the Indictment Satisfy the Mens Rea Requirements of the EEA**

8

Defendants further claims the Superseding Indictment violates Due Process because it fails to allege Defendants "knew that a trade secret was 'contained' in the roll over-ply down device owned by Goodyear, much less is it alleged that [they] had specific knowledge of the trade secret status of the unnamed materials 'contained' in the device." Def. Br. at 10. However this claim ignores both the express language of the indictment, and the numerous allegations regarding the Defendants' knowledge regarding the proprietary nature of Goodyear's roll over-ply down device.

First, each of Counts Two through Seven expressly recites each of the three mens rea elements of 18 U.S.C. § 1832. By way of example, count two alleges that the defendants:

> . . . with the **intent to convert** a trade secret to the economic benefit of someone other than Goodyear, and **intending and knowing that the offense would injure** Goodyear, did **knowingly steal, appropriate without authorization** and by fraud, artifice and deception obtain information, and attempt to do so, specifically a trade secret contained in the roll over-ply down device owned by Goodyear . . . .

This allegation properly alleges that the Defendants (1) intended to convert a trade secret for the benefit of another; (2) intended and knew their conduct would harm Goodyear; (3) and they acted knowingly – ie, not by mistake. Under the caselaw discussed above, this is all that is required to satisfy due process.

The Superseding Indictment goes beyond these allegations, however and details facts showing the Defendants' awareness that the roll over-ply down device was proprietary to Goodyear, and that their conduct in stealing, photographing, transmitting and possessing that information was not authorized. For example, the Superceding Indictment alleges the defendants lied to Goodyear about their purpose of visiting the facility in Topeka in order to gain access to the roll over-ply down device. It further alleges that Howley signed non-disclosure agreement and Roberts lied about signing a non-disclosure agreement before entering the facility and that they

9

attempted to procure a buttonhole camera to take surreptitious photos of the device, and when they were unsuccessful, used a cell phone camera instead. All of these allegations, and more, show that the defendants knew or should have known that Goodyear considered the roll over-ply down equipment proprietary, and that they had not right to steal information about it. Indeed, if that were not the case, likely would have simply asked Goodyear for the information before they went to such extremes to misappropriate.

These allegations show an even greater degree of knowledge on the part of the defendants than that which was held to be sufficient in *Genovese*. Unlike here, the defendant in *Genovese* did not have any privity of contract with Microsoft and simply downloaded source code from the Internet. *Genovese*, 409 F.Supp.2d. at 254, 257-58. Here, the defendants had far more reasons to know their conduct was prohibited, including having signed a non-disclosure agreement or lied about it, and entering a facility with signs prohibiting the use of cameras. Similarly, the Defendants' preparatory efforts to surreptitiously obtain photographs about the Goodyear roll over-ply down equipment showed an understanding that they were not authorized to use that information, just as Genovese's advertisement that the Microsoft source code was "jacked" indicated.

In sum, the Superseding Indictment more than adequately alleges an awareness by the Defendants of the proprietary nature of the roll over-ply down equipment and of the unauthorized nature of their conduct regarding that equipment.

**B.     THE SUPERCEDING INDICTMENT GIVES THE DEFENDANTS SUFFICIENT NOTICE OF THE CHARGES**

The defendants also argue that the Superceding Indictment should be dismissed because it fails to state an offense and is Constitutionally and procedurally deficient.

An indictment is constitutionally adequate, under the Fifth and Sixth Amendments, if it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend. *Hamling v. United States,* 418 U.S. 87, 117 (1974). Specifically, an indictment "must: (1) set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). Normally, an indictment satisfies this minimal standard simply by "using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense," all "accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *Id.*, *(quoting United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir.1992)); *see also Hamling*, 418 U.S. at 117-18. The Superseding Indictment meets and exceeds that standard.

**1. Count One unambiguously states the elements of the offense**

Defendant argues that Count One is insufficiently plead because it fails to allege all the elements of the offense. Defendant's Motion to Dismiss for Failure to State Offense, p. 9. This is not correct. Count One charges the defendants with a violation of Conspiracy under 18 U.S.C. §1832(a)(5). Each element of this offense is charged. The court in *Hsu*, stated that "the elements for 1832(a)(5) Conspiracy charges under § 1832 require both an agreement and an "overt act" in furtherance of the conspiratorial objective. See 18 U.S.C. § 1832(a)(5) (providing that a defendant is guilty of conspiracy if he "conspires with one or more other persons" to commit an offense proscribed by § 1832, and if "one or more of such persons do any act to effect the object of the

11

conspiracy")." *Hsu*, 155 F.3d at 204, n. 21. The Superceding Indictment clearly pleads the elements of conspiracy. Paragraph 12 of the Superceding Indicment specifically alleges that the defendants conspired and agreed to commit violations of Sections 1832(a)(1), (a)(2) and (a)(3). Paragraphs 14(a) through (e) sepecifically allege five overt acts committed by the defendants to effect the object of the conspiracy.

> Moreover, the Supreme Court has held that:
>
> It is well settled that in an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, or to state such object with the detail which would be required in an indictment for committing the substantive offense. In charging such a conspiracy 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary.'

*Wong Tai v. United States*, 273 U.S. 77, 81 (1927) (citations omitted). Accordingly, the Sixth Circuit has held that when a person is charged with conspiring to violate a federal statute, the indictment is sufficient if it identifies the object offenses and refers to the specific statutory sections involved. *United States v. Fruehauf Corp.*, 577 F.2d 1038, 1071 (6th Cir. 1978) *(citing Davis v. United States*, 253 F.2d 24, 25 (6th Cir. 1958)). Thus, under this standard, the Superceding Indictment more than adequately notifies the defendants of the charge.

### 2. Counts Two Through Seven are sufficiently particular and do not need to allege the statutory definition trade secrets.

Defendants next argue that Counts Two through Seven are Constitutionally deficient because they fail to allege that the defendants knew "that the item actually alleged to [have been] taken met the statutory definition of a trade secret." Defendant's Motion to Dismiss for Failure to State Offense at 10. As explained above, the government is not required to prove the defendants

knew that what they were stealing met the statutory definition of a trade secret. Not only is this not required under the statute, it would also essentially establish a willfulness requirement (which Congress explicitly rejected), and would unnecessarily limit the application of the Economic Espionage Act.

Significantly, the statute already includes a heightened intent standard and ensures that a criminal conviction does not result by accident or mistake. Section 1832 requires the government to prove five elements:

1. The defendant intended to convert a trade secret, to the economic benefit of anyone other than the owner;

2. The item or information was, in fact, a trade secret;

3. The defendant knowingly stole, or without authorization appropriated, took, carried away, or concealed, or by fraud, artifice, or deception obtained the trade secret;

4. The defendant intended, or knew, the offense would injure the owner of the trade secret; and

5. The trade secret was related to or included in a product that is produced for or placed in interstate or foreign commerce.

*See generally Hsu*, 155 F.3d at 195-96 (discussing elements).

Under the third element, the government must show that the defendant knowingly possessed or concealed information belonging to the trade secret owner; in other words, the defendant knowingly misappropriated property belonging to someone else without permission. In fact, Congress rejected a requirement that the government must establish that the defendant knew his conduct was unlawful:

> "It is not necessary that the government prove that the defendant knew his or her actions were illegal, rather the government must prove that the defendant's actions

13

> were not authorized by the nature of his or her relationship to the owner of the property and that the defendant knew or should have known that fact."

H.R. Rep. No. 104-788, at 12 (1996). By this language, Congress did not require the government show that the defendants specifically were aware of each element of the definition of a trade secret under Section 1839(3), as the defense argues. Not surprisingly, the defense fails to cite any authority for its novel position. In contrast, the Sixth Circuit has held that the "defendant need not have been aware of the particular security measures taken by [trade secret owner] Wilsonart. Regardless of his knowledge of those specific measures, defendant knew the information was proprietary." *Krumrei*, 258 F.3d at 539. In other words, the government need only show the defendants knowingly misappropriated property (or proprietary information) belonging to someone else without permission.

Moreover, on the second element of the offense, Congress already considered and established the proof necessary for a trade secret. In the definition of a trade secret, Congress imposed an objective standard. Congress did not adopt, as the defense requests, a defendant's knowledge standard including what the defendant knew and understood about whether the elements of the trade secret were met or not. As noted in the House Report:

> "The definition of trade secret requires that the owner of the information must have taken objectively reasonable and active measures to protect the information from becoming known to unauthorized persons. If the owner fails to attempt to safeguard his or her proprietary information, no one can be rightfully accused of misappropriating it."

H.R. Rep. No. 104-788, at 7 (1996). The measure is an objective one and not evaluated from the view or understanding of the defendant. If the government fails to meet this objective standard, no conviction would apply. Therefore, the defendant's proposed additional "defendant's knowledge"

14

element is not supported by the statute, legislative history or caselaw as an element of proof and therefore does not render Counts Two through Seven Constitutionally insufficient.

The defendants also claim that Counts Two through Seven should be dismissed because the government has failed to allege the specific trade secrets. This argument must also fail. An indictment is generally sufficient if it "fully, directly, and expressly ... set[s] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir.2005). The indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications. *United States v. Reed*, 77 F.3d 139, 140 n. 1 (6th Cir.1996) (en banc). An indictment is to be construed liberally in favor of its sufficiency. *United States v. Davis*, 306 F.3d 398, 411 (6th Cir.2002).

The Superceding Indictment more than adequately places the defendants on notice that the government is alleging that they stole trade secret information by taking photographs of Goodyear's rollover-plydown device, especially when read in conjunction with the discovery in this case. Additionally, the defendants have failed to show the how the Superceding Indictment prevents them from being able "to prepare for trial or to avoid or minimize the danger of surprise at the time of trial." *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). Therefore, their motion should be denied on this basis.

## C. MATERIAL MISREPRESENTATIONS ARE SUFFICIENTLY ALLEGED

Lastly, the defendants contend that Counts Eight through Eleven, which allege violations of the wire fraud statute, 18 U.S.C. § 1343, do not adequately set forth facts which show that "material" misrepresentations were made. Def. Memo at 12. Materiality of falsehood is a requisite element of wire fraud. *Neder v. United States*, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The misrepresentation "must have the purpose of inducing the victim of the fraud to part with the property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir.2003). A misrepresentation "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder*, 527 U.S. at 16, 119 S.Ct. 1827.

Defendant argues that the Superceding Indictment insufficiently alleges the material misrepresentations because it does not allege facts which "establish the essential element of materiality." Def. Memo. at 12. In essence, the defendant is arguing that the Superceding Indictment is defective because it fails to prove on its face that the statements were in fact material. This however, is a question for the jury to decide at trial and is not appropriate for a pre-trial disposition.

In *United States v. Gaudin*, 515 U.S. 506, 523(1995), the Supreme Court held that, when materiality is an element of a criminal fraud offense, the question of materiality must be submitted to the jury. Prior to *Gaudin*, courts considered materiality to be an issue of law for the court in a criminal fraud prosecution, and would hold pretrial hearings on the question and dismiss the indictment if the government failed to establish that an allegedly fraudulent statement was material. *See United States v. Bailey*, 34 F.3d 683, 687 (8th Cir.1994), *applying United States v. Lasater*, 535

F.2d 1041 (8th Cir.1976). After *Gaudin*, however, this procedure is no longer appropriate, because materiality is an issue for the jury. Now, so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not "provide for a pre-trial determination of sufficiency of the evidence." *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir.1992). As the Third Circuit said in *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir.2000):

> In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29....

Therefore, since the Superceding Indictment makes a facially sufficient allegation of materiality, there must be a trial on the issue and defendants motion to dismiss Counts Eight through Ten should be denied.

### III. CONCLUSION

For the reasons mentioned herein, the United States respectfully requests that this court find that the Superceding Indictment is not Constitutionally vague as applied to the defendants, that it sufficiently alleges the elements of the offense charged and fairly informs the defendants of the charge against which they must defend and deny their Motion to Dismiss the Superceding Indictment on the Basis of Failure to State an Offense and their Motion to Dismiss the Superceding Indictment on the Basis of Constitutional Vagueness.

Respectfully submitted,

JAMES R. DEDRICK
United States Attorney


 s/ D. Gregory Weddle
 s/ Thomas S. Dougherty
D. GREGORY WEDDLE
Assistant United States Attorney
THOMAS S. DOUGHERTY
Trial Attorney, U.S. Department of Justice
800 Market Street, Suite 211
Knoxville, Tennessee 37902
Telephone: (865)545-4167

CERTIFICATE OF SERVICE

  I hereby certify that, on June 5, 2009, a copy of the foregoing OMNIBUS RESPONSE TO DEFENDANTS MOTION TO DISMISS SUPERCEDING INDICTMENT ON THE BASIS FOR FAILURE TO STATE AN OFFENSE  AND DEFENDANTS' MOTION TO DISMISS INDICTMENT ON THE BASIS OF UNCONSTITUTIONAL VAGUENESS  was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                              By:     /s/ D. Gregory Weddle
                                       Assistant United States Attorney