# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA )
)
     Plaintiff, )
)
v. )    Case No.3:08-cr-175
)    JUDGES PHILLIPS/SHIRLEY
CLARK ALAN ROBERTS, and )
SEAN EDWARD HOWLEY, )
)
     Defendants. )

## REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS

The defendant, Clark Alan Roberts, by and through counsel, herein replies to the government's Response [Doc. 53] to his motion [Docs. 39, 40] for an order suppressing the fruits of the search and seizure conducted by law enforcement at Wyco Tire Technology, Inc. in Greenback, Tennessee in September 2007.[1] The search was unconstitutional, because agents interpreted the warrant to permit them to "image" entire computers and seize evidence, electronic and physical, for which there was no probable cause.

## I. MR. ROBERTS HAS STANDING TO CHALLENGE THE GENERAL WARRANT USED TO SEIZE EVIDENCE IN WHICH MR. ROBERTS HAD A REASONABLE EXPECTATION OF PRIVACY FROM WYKO IN 2007.[2]

Mr. Roberts has standing to challenge the search warrant executed at the business where he was employed in a management role, because, pursuant to the search warrant, items in which he had a reasonable expectation of privacy were seized. The government does not deny that the Fourth Amendment's protections against unreasonable searches and seizures extend to business

---

[1] To date, the government has not provided the return for the warrant to the defense in discovery.

[2] The government asserts that "[t]he Defendant's motion does not complain about the search and seizure of non-computer items of evidence." [Doc. 53 at 1 n.1]. Although the motion certainly focused on the search and seizure of computer items of evidence, the foundation of the motion was that the warrant was insufficiently particularized and, due to a lack of discovery, an evidentiary hearing is necessary to determine the scope of items seized and whether they should be suppressed. [Doc. 40 at 10].

premises. See Michigan v. Tyler, 436 U.S. 499 (1978). Rather, the government only claims that Mr. Roberts "has not established an expectation of privacy in Wyko's business records." [Doc. 53 at 1]. Mr. Roberts herein reasserts that because each claim of standing is a unique, fact-intensive inquiry, an evidentiary hearing is necessary. Mr. Roberts would point out that, in the government's Response, the government helpfully quotes from the same case cited in Mr. Roberts' Motion, United States v. Mohney, 949 F.2d 1347 (6th Cir. 1991). In Mohney, the Sixth Circuit held that "in some circumstances, an officer of a corporation may be a 'person aggrieved' by a corporate search," such as when the documents are "taken from his personal office, desk, or files . . . ." Id. (citing United State v. Britt, 508 F.2d 1052, 1055 (5th Cir. 1975)). [Doc. 53 at 2]. Here, although a Return has not yet been provided, upon information and belief, the FBI seized real and electronic files from areas within Wyko where Mr. Roberts had a reasonable expectation of privacy, to include, but not limited to, his laptop computer, his e-mail files, files Mr. Roberts was working on located in the computer file servers, and numerous documentary items and physical papers.

At an evidentiary hearing, this Court will be able to determine whether Mr. Roberts had a protected expectation of privacy by finding out, for example, whether Mr. Roberts was present at the time of the search and whether he had some interest in either the place searched or the effects seized. In Mancusi v . DeForte, 392 U.S. 364 (1968), a defendant objected to the search of an office he shared with several other workers. The Supreme Court, characterizing the issue as whether the defendant had an expectation of privacy in the area, reasoned:

> The record reveals that the office where DeForte worked consisted of one large room, which he shared with several other union officials. The record does not show from what part of the office the records were taken, and DeForte does not claim that it was a part reserved for his exclusive personal use. The parties have stipulated that DeForte spent 'a considerable amount of time' in the office, and that he had custody of the papers at the moment of their seizure.

**We hold that in these circumstances DeForte had Fourth Amendment standing to object to the admission of the papers at his trial**. It has long been settled that one has standing to object to a search of his office, as well as of his home. Since the Court in Jones v. United States, supra, explicitly did away with the requirement that to establish standing one must show legal possession or ownership of the searched premises, it seems clear that if DeForte had occupied a 'private' office in the union headquarters, and union records had been seized from a desk or a filing cabinet in that office, he would have had standing. In such a 'private' office, DeForte would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors. It seems to us that the situation was not fundamentally changed because DeForte shared an office with other union officers. DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups. This expectation was inevitably defeated by the entrance of state officials, their conduct of a general search, and their removal of records which were in DeForte's custody. It is, of course, irrelevant that the Union or some of its officials might validly have consented to a search of the area where the records were kept, regardless of DeForte's wishes, for it is not claimed that any such consent was given, either expressly or by implication.

Mancusi v. DeForte, 392 U.S. 364, 369-370 (1968) (internal citations omitted) (emphasis added).

Based on Mancusi, courts have continuously held that there can be an expectation of privacy in a work space or document even when it is shared with others. See United States v. Mancini, 8 F.3d 104 (1st Cir. 1993) (finding that mayor had standing regarding his appointment calendar, even though his "secretaries had access to the appointment calendar, shared access to a document does not prevent one from claiming Fourth Amendment protection in that document" where "personal and public calendar entries are intermingled"); Villano v. United States, 310 F.2d 680 (10th Cir. 1962) (holding that employee in TV store had standing in desk and notebooks therein used by him and other employees); United States v. Lefkowitz, 464 F.Supp. 227 (C.D. Cal. 1979).

Following Mancusi, courts have also found that when a desk or area is set aside within a business premises for the use of the defendant, the defendant has standing. See United States v.

Chaves, 169 F.3d 687 (11th Cir. 1999) (holding that defendant who was not the owner of a warehouse and not present at time of search had standing because, in part, "he also kept personal and business records" there); United States v. Leary, 846 F.2d 592 (10th Cir. 1988) (ruling corporation VP had standing "in his corporate office"); Ortega v. O'Connor, 764 F.2d 703 (9th Cir. 1985). Standing is more likely to be found when the seized items are connected with the defendant or if the defendant played a key role in creating the item. See United States v. Anderson, 154 F.3d 1225 (10th Cir. 1998); United States v. Alwelt, 532 F.2d 1165 (7th Cir. 1976). The case cited by the government, by comparison, Lagow v. United States, 159 F.2d 245, 246 (2d Cir. 1946), is inapposite. Contrary to the government's assertion, Mr. Roberts does not claim standing on behalf of the corporation as did the defendant in Lagow; Mr. Roberts claims standing because he had a personal and reasonable expectation of privacy in the materials seized.

## II. THE WARRANT LACKED PARTICULARITY; THE GOVERNMENT'S REPSONSE DOES NOT ACCOUNT FOR THE CONTEXT OF THIS SEARCH AND SEIZURE.

The government asserts that, "[e]ven if Defendant Roberts did have standing, the warrant establishes probable cause," and then dismisses Mr. Roberts' argument as a "generalized challenge to the sufficiency of the search warrant." [Doc. 53 at 3]. Respectfully, the government's response is a generalized rejection of Mr. Roberts' specific objection to a search warrant that purported to authorize agents to seize any "[c]omputers . . . . which contain evidence related to violations of Title 18, United States Code, Section 1832 and 2314 [trade secrets]" [Doc. 40 at 3] (citing Search Warrant). The Search Warrant does not indicate how agents could have known which, if any, computers "contained evidence" of trade secret violations; as such, an evidentiary hearing is necessary to discover how agents determined that there was probable cause to seize the computers on site (and subsequently search them). Because there was no

probable cause to seize and search specific computers, the warrant was an unconstitutional general warrant.

The government makes the general claim that "[w]hen a search warrant authorizes agents to search a premises and seize things that might be stored on a computer, agents have the authority to seize any computer on the premises that might contain those things and search through that computer off-site." [Doc. 53 at 3]. According to the government, there are no limits on its search of a computer other than *post facto* reasonable analysis, and only when raised by the defendant. Id. at 8 ("[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness."). See also id. at 8 n.2 (interpreting the Department of Justice's manual on computer crimes which states that "[w]hen agents have a factual basis for believing that they can locate evidence using a specific set of techniques, the affidavit **should** explain the techniques that the agents plan to use to distinguish incriminating documents from comingled documents" as only "recommend[ing] including a search strategy as a means of heading off later defense arguments that the search was conducted unreasonably") (emphasis added). Whether or not a defendant raises the issue of the reasonableness of a search, the government is limited by the Constitution's requirement of reasonableness. See Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978) (providing that "critical element" of a reasonable search conducted pursuant to search warrant is that the affidavit must demonstrate "that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought," not just "that the owner of property is suspected of a crime").

The government argues that "the warrant allowed the seizure of the computer" and relies on Guest v. Leis, 255 F.3d 325 (6th Cir. 2001), to support its argument that the warrant and off-

site search complied with the Fourth Amendment, stating that, "[n]ot surprisingly, every other circuit to consider this question has arrived at the same answer," [Doc. 53 at 4].[3]  It is not clear what "question" and which "same answer" the government claims are supported by the cited cases.  The cases cited by the government – as characterized by the government in explanatory parentheticals – hold that the government has sometimes been permitted to seize computers and computer equipment, giving less focus to the scope of a constitutional search of a computer's contents. [Doc. 53 at 4-5].

Nor is the issue resolved by the government's claim that "Judge Greer recently rejected essentially the same argument in United States v. Tillotson, No. 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008)." [Doc. 53 at 5].  Tillotson does not resolve the issue, because even though Tillotson and Mr. Roberts' case both involve computers, the similarities between the two cases end there.  In Tillotson, an officer investigating child pornography entered a chat room devoted to that topic and "came across an advertisement from a person" stating that he was "willing to trade in exchange for other images of child pornography."  Tillotson, at *2.  The officer connected to that person's fileserver, reviewed the available files, and noted that "the file server had 531 total files . . . and had been visited by 31 different countries and had 4,721 uploads."  Id. at * 7.  Based on this information, a search warrant was obtained and executed, and the defendant's computer was seized.  Id. at *3.  Pre-trial, in response to the defendant's argument that the search of the computer exceeded the scope of the warrant, the Tillotson Court

---

[3] The government also cites to United States v. Henson, 848 F.2d 1374 (6th Cir. 1988), but without an explanatory parenthetical.  In Henson, law enforcement officers sought a search warrant for a car lot where the defendant was suspected of altering odometers.  The affidavit in support of the warrant "suggested an ongoing scheme to purchase automobiles and resell them with tampered odometers [and the law enforcement officer] had good reason to believe that some of the vehicles, and their accompanying documents, identified during the survey would no longer be on the premises when the warrant was executed, while others would have been added."  Id. at 1383.  The defense argued that the warrant's lack of particularity transformed it into a general warrant.  Rejecting the argument, the Sixth Circuit held that *the "warrant in this case was as 'specific as the nature of the activity under investigation permitted.'"*  Id. at 1383 (emphasis added).

correctly stated that "the specificity required in a warrant is not amenable to an absolute or bright-line definition; it varies from case to case, depending upon the type of items to be seized and the type of crime under investigation." Id. at *4 (citing United States v. Henson, 848 F.2d 1374, 1383 (6th Cir. 1988)). In Tillotson, the "type of items to be seized" were "highly illegal" pornographic depictions of minors, and the "type of crime under investigation" was an "on-going enterprise" of long duration and wide scope. Id. at *3. Unlike those facts known to authorities preceding the warrant in Tillotson, investigating agencies in this case believed the defendants were involved in illegal activity with regard to one contract to build one component of a tire in 2007.

Next, the government unduly limits the scope of protection that the Fourth Amendment affords containers. Citing a Ninth Circuit case, the government asserts that, "It is black-letter law that agents executing a search warrant may examine the contents of containers if it is 'reasonable to expect that the items enumerated in the search warrant could be found therein.'" [Doc. 53 at 5]. However, the government skips a step of the Fourth Amendment "container" analysis. As understood by the U.S. Supreme Court, the "prohibition against general searches and general warrants serves primarily as a protection against unjustified intrusions on privacy," meaning that

> **[e]ven if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents** because it may only be opened pursuant to either a search warrant, see *Smith v. Ohio,* 494 U.S. 541 (1990); *United States v. Place,* 462 U.S. 696, 701 (1983); *Arkansas v. Sanders,* 442 U.S. 753 (1979); *United States v. Chadwick,* 433 U.S. 1 (1977); *United States v. Van Leeuwen,* 397 U.S. 249 (1970); *Ex parte Jackson,* 96 U.S. 727, 733 (1878), or one of the well-delineated exceptions to the warrant requirement. See *Colorado v. Bertine,* 479 U.S. 367 (1987); *United States v. Ross,* 456 U.S. 798 (1982)."

Horton v. California, 496 U.S. 128, 141, 142 n.11 (1990) (emphasis added).

> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. . . . Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

Id. at 140-41 (quoting United States v. Ross, 456 U.S. 798, 824 (1982)). Like the automobile/trunk analogy, the computer/file distinction matters for the probable cause analysis in determining whether, even if the government had probable cause to search parts of the computers seized from Wyko, it lacked probable cause to search other parts. The government may not employ an electronic device (like computer forensic software) to obtain information in an area where one has a reasonable expectation of privacy that could not be gained through sensory observation. See United States v. Karo, 468 U.S. 705, 715 (1984); United States v. Knotts, 460 U.S. 276 (1983). Without probable cause to search the entire contents of each computer, the government cannot rely on an "electronic device" to circumvent the warrant requirement.

Rather than address the issue raised by Mr. Roberts, the government compares digital searches to physical searches, reasoning that "[t]he process of searching through a computer – like the process of searching through a desk drawer, filing cabinet, or bedroom – necessarily requires agents to inspect some items that are not called for by the warrant in the course of looking for those items that are," and that because this is "reasonable when done as part of physical searches . . . [it] is reasonable in computer searches as well." [Doc. 53 at 6]. See also United States v. Ford, 184 F.3d 566 (6th Cir. 1999) (ruling that search warrant was overbroad which had allowed the police to seize "several file cabinets and eleven boxes of documents").

The government's final argument against Mr. Roberts' motion is that specifying the places on the hard drive to be searched and a methodology for conducting a computer search is not required by the Fourth Amendment and "would be difficult," citing United States v. Grubbs,

547 U.S. 90 (2006), for the proposition that search warrants need not include a specification "of the precise manner in which they are to be executed." [Doc. 53 at 6-7]. However, Grubbs does not address general warrants. In Grubbs, law enforcement officers obtained an anticipatory search warrant to search the defendant's home "on the basis of an affidavit explaining that the warrant would be executed only after a controlled delivery of contraband to that location." Grubbs, 547 U.S. at 92. After the controlled delivery of child pornography was made, law enforcement officers searched his home. Id. "Roughly thirty minutes into the search, Grubbs was provided with a copy of the warrant, which included both attachments but not the supporting affidavit that explained when the warrant would be executed." Id. at 93. The defendant moved to suppress the evidence, arguing that the warrant was invalid for failing to list the triggering condition, in violation of the Fourth Amendment's particularity requirement. Id. at 93. The Court first held that anticipatory search warrants are not categorically unconstitutional. Id. at 95 ("Because the probable-cause requirement looks to whether evidence will be found *when the search is conducted*, all warrants are, in a sense, 'anticipatory.'"). On appeal, the Ninth Circuit invalidated the anticipatory search warrant, but the Supreme Court reversed the Ninth Circuit and ruled that the Fourth Amendment "does not set forth some general 'particularity requirement.' It specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched" and "the persons or things to be seized.'" Id. at 97. The Grubb Court then held that "[n]othing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, *in addition to the [requirements set forth in the text]*, search warrants must also include a specification of the precise manner in which they are to be *executed*." Id. at 98 (quoting Dalia v. United States, 441 U.S. 238 (1979)) (emphasis added). Grubbs is inapposite to the issue, therefore, because the issue before the Supreme Court dealt only with the *execution*

of a search warrant.  Here, Mr. Roberts argues that the search warrant lacked particularity *on its face* thereby failing to limit both the execution and any subsequent searches.

If the government's argument is based on Grubb, a holding directed only at the execution of the warrant, then the government must be arguing that the execution of the warrant in this case is ongoing.  If this were true, the government would be in violation of Rule 41 of the Federal Rules of Criminal Procedure and the Fourth Amendment which limits when warrants may be executed.  See Fed. R. Crim. P. 41 (e)(2) ("The warrant must command the officer to . . . execute the warrant within a specified period of time no longer than 10 days"); Fed. R. Crim. P. 41(f)(1)(A) ("The officer executing the warrant must enter on it the exact date and time it was executed."); United States v. Corrado, 803 F.Supp. 1280 (M.D. Tenn. 1992) (suppressing all evidence seized as a result of the delayed execution of the search warrant).  Here, there has been no return produced to indicate when the warrant was executed.  See also United States v. Keszthelyi, 308 F.3d 557, 571 (6th Cir. 2002) ("Once the execution of a warrant is complete . . . the authority conferred by the warrant terminates.").  Further, the "requirements set forth in the text," Grubb, at 238, indicate that the ultimate measure of the constitutionality of a governmental search is "reasonableness."  See Veronica School District 47 v. Acton, 515 U.S. 646 (1995).  To the extent that any searches have been conducted since the computer was seized, and to the extent that such searches have been pursuant to the government's asserted authority to execute a search warrant without limitations on the manner of execution, the government has exceeded the scope of the search warrant by searching for longer than was reasonably necessary to execute the search warrant.  See United States v. Mitchell, No. 08-10791, 2009 WL 1067212, *2-3 (11th Cir. Apr. 22, 2009) (vacating conviction and holding that 21-day delay in obtaining search warrant for seized computer hard drive was unreasonable) ("[W]hile the initial seizure of the hard drive

was permissible, even 'a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on "unreasonable searches."'").

The government claims that "even if the Defendant had . . . established a particularity violation, that would not justify suppression." [Doc. 53 at 9]. The government is correct that the exclusionary rule is not automatically triggered by all Fourth Amendment violations. See Arizona v. Evans, 514 U.S. 1, 10 (1995). Indeed, the exclusionary rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect." United States v. Calandra, 414 U.S. 228, 348 (1974). The government cites Hudson v. Michigan, 547 U.S. 586 (2006), as saying that exclusion is a last resort, but Hudson does not save this unconstitutional search because the Fourth Amendment violation at issue involved the seizure of evidence. In Hudson v. Michigan, 547 U.S. 586 (2006), the police sought and obtained a warrant to search the defendant's house. However, when "the police arrived to execute the warrant, they announced their presence, but waited only a short time – perhaps 'three to five seconds' before turning the knob on the unlocked from door and entering [the defendant's] home." Id. at 588. The state conceded that the entry was a "knock-and-announce violation," leaving the Supreme Court to determine only the proper remedy. Id. at 590. The Court looked at the history of knock-and-announce rule and contrasted that history with the interests of people protected by the Fourth Amendment:

> What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. **Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable**.

Id. at 594 (emphasis added). The government's response indicates both that an evidentiary hearing is still appropriate and that other disclosures are necessary for this Court to conduct a

"reasonableness" inquiry into the computer search. According to the government, "[a]gents already operate under significant constitutional restrictions when they search a hard drive. As with any search, 'the manner in which a warrant is executed is subject to later judicial review as to its reasonableness.'" [Doc. 53 at 8] (quoting <u>Dalia</u>, 441 U.S. at 258). The government cites three cases which it says stand for the proposition that the Fourth Amendment requires that the execution of warrant be reasonable, but then concludes that "[u]nreasonable conduct can be remedied after the fact." [Doc. 22 at 11]. Whether or not these computers and servers continue to be searched and the amount, duration, and scope of any past searches are relevant to the reasonableness of the search warrant, its execution, and any subsequent searches of the computer.

## III.    CONCLUSION

For the above reasons, Mr. Roberts moves the Court for the entry of an Order suppressing all items obtained as a result of the search warrant executed on the premises of Wyco Tire Technology in Greenback, Tennessee in September 2007. Mr. Roberts further moves the Court for an evidentiary hearing and for the opportunity to supplement the instant motion upon the receipt of additional discovery.

s/ W. Thomas Dillard
**W. THOMAS DILLARD**
**[BPR # 002020]**

s/ Stephen Ross Johnson
**STEPHEN ROSS JOHNSON**
**[BPR# 022140]**

**RITCHIE, DILLARD, & DAVIES, P.C.**
606 W. Main Street, Suite 300
P. O. Box 1126
Knoxville, TN 37901-1126
(865) 637-0661
www.rddlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

<u>s/ Stephen Ross Johnson</u>